**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALLAN DILLARD,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| *Defendants.* | : | **No. 22-cv-0941** |

**MEMORANDUM**

**KENNEY, J.**                                                **June 30, 2025**

  Before this Court is Defendant Reginald Graham's Motion to Dismiss Plaintiff's Amended Complaint. ECF No. 53. For the reasons set forth below, this Court will **DENY** Graham's Motion to Dismiss (ECF No. 53).

## I. BACKGROUND

  On March 10, 2022, Plaintiff Allan Dillard filed a complaint against former police officer Reginald Graham and the City of Philadelphia, ECF No. 2, which he amended on March 28, 2022. ECF No. 7. Dillard, a pro se litigant serving a life sentence without the possibility of parole, sued the City, based on a theory of municipal liability, and Graham under 42 U.S.C. § 1983 over alleged violations of his Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights arising from Graham's deliberately improper "flipping" of a witness.[1] ECF No. 7 at 3-5. Dillard alleged that these practices led to his unlawful arrest and subsequent emotional distress. *Id*. Dillard further stated that his charges were dropped by the Philadelphia District Attorney's office after he

---

[1] Dillard defines flipping as a law enforcement custom in which offenders are offered protection or a benefit in exchange for providing information on criminal conduct. ECF No. 7 at 3.

completed his sentence, and he requested punitive damages and compensatory damages for his emotional injuries and lost wages. *Id*. at 2, 6.

This Court ordered the U.S. Marshals to serve Defendants with the summons and amended complaint on March 31, 2022. ECF No. 8 at 1. On July 8, 2022, the Marshals filed the return receipt with the Court, which showed Graham had not been served.[2] ECF No. 12 at 1, 3. Dillard had instructed the Marshals to ask the City or the Philadelphia Police Department for an address to serve Graham, but the Marshals were informed that Graham was no longer an employee of the City, and the City did not provide an alternative address. *Id.* at 3.

This case was placed in suspense on September 14, 2022, to decide whether this case should be tried together with other related cases, *see* ECF No. 18 at 1; ECF No. 20 at 1-2, and it was not reopened until November 15, 2023. ECF No. 20 at 1. On February 22, 2024, 287 non-suspended days from the initial filing of the complaint, and 269 days from the filing of the amended complaint, the Court ordered the Marshals to make a second attempt at serving Graham, upon Dillard providing the Marshals with a correct address for Graham. ECF No. 27 at 1.

On April 25, 2024, after the Marshals were unable to serve Graham,[3] the Court gave Dillard an additional sixty days to provide a USM-285 form "with a full and correct address" for Graham. ECF No. 34 at 1. Dillard was unable to provide a full address for Graham, so on August 2, 2024, the Court ordered the City to provide Dillard with Graham's last known address within two weeks. ECF No. 39 at 1. On August 6, 2024, two attorneys entered notices of appearance on behalf of Graham, ECF Nos. 41-42, and on August 28, Graham filed a motion to dismiss for insufficient

---

[2] Service on the City was successful on this attempt, *see* ECF No. 12 at 1, and the City filed an answer to the amended complaint on March 28, 2024. ECF No. 31.

[3] The Marshals never filed an update that service was unsuccessful the second time, but a USM-285 form was filed on April 15, 2025, which listed Graham's last known address as 'police headquarters,' and it was unsigned by the Marshals. ECF No. 33 at 1.

service of process. ECF No. 43. The Court struck the motion to dismiss without prejudice, waiting to hear the motion until the City complied with either the Court's August 2, 2024 Order to provide Graham's last known address or with a subsequent Order to accept service on his behalf. ECF No. 44. By the end of March 2025, the City had still not provided Graham's address or accepted service on his behalf. ECF No. 47 at 1.

On April 4, 2025, the Court ordered a show cause hearing regarding the City's continued failure to comply with the August 2, 2024 Order.[4] *Id.* The hearing was canceled after the City represented to the Court that it had conferred with Graham's counsel, who agreed to accept service on Graham's behalf "without prejudice to the issue of the timeliness of service." ECF No. 50 at 4-5.

On May 8, 2025, Graham filed a motion to dismiss for insufficient service of process, as he had never been personally served with the original or amended complaint. *See* ECF No. 53-1 at 1-3. On May 15, 2025, Dillard became represented by counsel, after being on this District's volunteer attorney panel for prisoner civil rights cases since August 2, 2024, and the appointed attorney responded to Graham's Motion to Dismiss. ECF Nos. 54, 56.

## II.    DISCUSSION

Defendant Graham moves to dismiss this case, alleging that Dillard failed to serve him within ninety days of the filing of the amended complaint. ECF No. 53-1 at 1-2. Dillard argues that while Graham has yet to be personally served, he should be granted a thirty-day extension for service by this Court. ECF No. 56 at 6-7.

Federal Rule of Civil Procedure 4(m) directs courts to dismiss actions without prejudice or order service within a specified time if service is not made within ninety days after the complaint

---

[4] The show cause hearing was ultimately scheduled for April 24, 2025. ECF No. 48.

is filed. Fed. R. Civ. P. 4(m). But "if the plaintiff shows *good cause* for the failure, the court *must extend the time for service* for an appropriate period." *Id.* (emphasis added). Extensions for service under Rule 4(m) undergo a two-step inquiry. *Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997) (citing *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995)). First, the court looks to several factors to determine if "good cause" exists for an extension of service. *See id.* If the court determines there is good cause, an extension of service is mandatory. *See Petrucelli*, 46 F.3d at 1305. Second, if the court decides there is no good cause, it can still grant a discretionary extension for service. *Id.*

As discussed below, a thirty-day extension is appropriate here because Dillard meets the requirements for a mandatory extension of the service period and, in any case, qualifies for a discretionary extension given the context of his attempted service. *See Boley*, 123 F.3d at 757-58.

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(5), a party may move to dismiss for insufficiency of service, based on the service requirements of Federal Rule of Civil Procedure 4(m). Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 4. Rule 4(m) creates a ninety-day window for service after the filing of the complaint. Fed. R. Civ. P. 4(m). If service is not made within this window, the court "must" dismiss the case against unserved defendants without prejudice or order service within a specified time, unless the court finds "good cause" for the delay. Fed. R. Civ. P. 4(m). When the sufficiency of service is in question, "the party asserting the validity of service bears the burden of proof on [the] issue." *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993).

Graham filed a Rule 12(b)(5) motion, alleging violations of Rule 4(m)'s ninety-day window for service, as he was never personally served. ECF No. 53-1 at 2.[5] Accordingly, the burden of proof for timeliness of service falls on Dillard.

## B.  Good Cause Extension

Dillard concedes that Graham was never personally served with the original complaint or the amended complaint. *See* ECF No. 56 at 4. He contends, however, that the complaint should not be dismissed because he made reasonable attempts to serve Graham and Graham's defense is not prejudiced by the delay in service, entitling him to a mandatory good cause extension to serve from the Court. ECF No. 56 at 4-6.

What constitutes good cause is left to the courts. *See Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381, 382-83 (7th Cir. 1998). Courts in the Third Circuit use a three-factor test for good cause determinations. *Beautyman v. Laurent*, 829 F. App'x 581, 583 (3d Cir. 2020); *see also MCI Telecomms Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995) (citing *U.S. v. Nuttall*, 122 F.R.D. 163, 167 (D. Del. 1988)). The first factor is the reasonableness of a plaintiff's effort to serve, the second factor is whether the lack of timely service prejudices the defendant, and the third factor is whether the plaintiff moved for an enlargement of time to serve. *Nuttall*, 122 F.R.D. at 167. The "primary focus" of the court's analysis is why service was untimely, so satisfying the first two factors can suffice for a court to grant good cause. *Id.*

While the Third Circuit gives three factors to aid courts in their good cause determinations, "[i]t is … well-established that 'good cause' determinations entail discretionary conclusions by the district court." *Hendry v. Schneider*, 116 F.3d 446, 449 (10th Cir. 1997) (citing *Floyd v United States*, 900 F.2d 1045 (7th Cir. 1990)). The three factors are not a bright-line standard for the court

---

[5] Graham's lack of service is uncontested by Dillard. *See* ECF No. 56 at 4.

to strictly follow, as it is within the reasonable discretion of a judge to decide on the factors based on the unique facts of each case. *See id.* To determine whether service must be extended, courts look for "a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rule." *Petrucelli*, 46 F.3d at 1312. In other words, the "[p]rimary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *MCI*, 71 F.3d at 1097. The burden in this case falls on Dillard to present evidence showing good cause for untimely service. *See Grand Ent. Grp.*, 988 F.2d at 488.

Applying the good cause factors to this case, Dillard had good cause and is entitled to a mandatory extension. First, Dillard made a reasonable effort to serve Graham. Reasonableness turns on "whether the delay in service result[ed] from mere inadvertence, or conversely whether the plaintiff made a reasonable effort to effect service." *Nuttall*, 122 F.R.D. at 167; *see also MCI*, 71 F.3d at 1097 (Third Circuit's use of *Nuttall* factors for good cause determinations). Reasonableness is equated to a due diligence standard, as courts ask whether the plaintiff reasonably tried to effectuate service on the defendant, which is a fact-dependent question. *Nuttall*, 122 F.R.D. at 167. The court in *Nuttall* decided that the first factor was satisfied after the plaintiff attempted to serve the defendant via mail twice, and via personal delivery to their residence eighteen times.[6] *Id.* at 164-65. Although the defendant was not served within the mandatory service period, a good cause extension was granted in part because attempts at service were not just reasonable, "but border[ed] on heroic." *Id.* at 167.

Dillard made multiple attempts to serve Graham. Dillard was a pro se plaintiff until May 15, 2025, ECF No. 54, and when filing his complaint in March 2022, he reasonably relied upon the U.S. Marshals to make service on his behalf. *See* ECF No. 56 at 4-5; *see Braxton v. United*

---

[6] In a conversation with a Deputy United States Marshal the defendant informed the agent he "was not willing to make it easy for the Government to serve him." *Nuttall*, 122 F.R.D. at 165.

*States*, 817 F.2d 238, 240 (3d Cir. 1987) (service of process conducted by Federal Marshals "[gives] the courts confidence that the procedures were being performed competently and properly"), *superseded by rule on other grounds*, Fed. R. Civ. P. 4(m); *Himmelreich v. United States*, 285 F. App'x 5 (3d Cir. 2008) (concluding the plaintiff reasonably relied on service by Marshals). The Marshals made two attempts at service. On July 8, 2022, the Marshals filed the return receipt for service with the Court and informed Dillard that on their first attempt, the City of Philadelphia had been served, but service on Graham was unsuccessful. ECF No. 12 at 1-3. On February 22, 2024, the Marshals were ordered to attempt service on Graham a second time. ECF No. 27 at 1. Dillard never appears to have been directly informed by the Marshals that their second attempt at service was also unsuccessful, and he reasonably inferred that the second attempt was successful. ECF No. 56 at 4-5; *see Himmelreich*, 285 F. App'x at 7-8 (a pro se litigant has good cause when it is not unreasonable for them to believe service was affected).

Although the gap between the two attempts at service was around two calendar years, the case was suspended for thirteen months during this time, and would later be paused for another eight months, meaning that the case has only been active for 493 days since its filing in March 2022, and Dillard complied with the Court-mandated orders for service when the case was active. ECF No. 56 at 5. On the USM-28 form for the second attempt at service, Dillard listed Graham's address as "Philadelphia Police Headquarters, City of Philadelphia." ECF No. 34 at 1 n.2. The Marshals were unable to serve Graham because by April 25, 2024, he was no longer a City employee, a development which the Court did not reasonably expect an imprisoned Dillard to know. *See id*. Accordingly, the Court granted a good cause extension of sixty days for Dillard to locate Graham's address. *Id*.

Recognizing the difficulty Plaintiff encountered when trying to find Graham's address, the Court subsequently ordered the City to provide Dillard with Graham's address, ECF No. 39 at 1, or accept service on Graham's behalf. ECF No. 44 at 1. The City did not comply with this Order for months, and preceding a show cause hearing regarding why the City had not complied with the Court's Orders, the City represented to the Court that it had conferred with Graham's counsel who would be willing to accept service on Graham's behalf "without prejudice to the issue of timeliness of service." ECF No. 50 at 5. Based on this representation, the Court cancelled the hearing. ECF No. 50 at 1.

This Court determined that Plaintiff made a reasonable effort to serve on April 25, 2024, after the two initial attempts at service had been made through the Federal Marshals, *see* ECF No. 34 at 1 n.2, and Plaintiff continues to make a reasonable effort to serve Graham today after waiting months for the City to provide Graham's last known address or accept service on his behalf then being informed that Graham's counsel would accept service without prejudice regarding the timeliness of service.[7] Dillard acted reasonably and in good faith to serve Defendant Graham, and his untimely service was not because of mere inadvertence or a lack of diligence.

Regarding the second factor, Graham's defense is not prejudiced by untimely service. Untimely service prejudices a defendant when it "[impairs the] defendant's ability to defend on the merits, rather than foregoing... a procedural or technical advantage." *Boley*, 123 F.3d at 759 (citing *National Union Fire Ins. Co. v. Barney Assoc.*, 130 F.R.D. 291, 194 (S.D.N.Y. 1990)). Actual notice of the action is crucial to a determination of prejudice, because if the defendant has actual notice of the case at an early enough point after filing, their ability to prepare a defense on

---

[7] The Plaintiff notes that he was not provided Graham's last known address until August 2, 2024, at the earliest, though even after court orders the information was never filed. ECF No. 56 at 5.

the merits is not impacted by untimely or technically improper service.[8] *Id.* (citation omitted); *see also Dominic v. Hess Oil V.I. Corp.*, 841 F.2d 513, 517 (3d Cir. 1988); *Nuttall*, 122 F.R.D. at 167. Prejudice is an important factor, but the "absence of prejudice alone can *never* constitute good cause to excuse late service." *MCI*, 71 F.3d at 1097 (emphasis added).

Graham had actual notice of the suit on August 6, 2024, at the latest, when his counsel entered a notice of appearance on his behalf. ECF Nos. 41-42. August 6 is within the extended window for service created by this Court after the City was ordered to provide Graham's last known address or accept service on his behalf, even though it falls outside of the original window of service from the time of the amended complaint. *See* ECF No. 39 at 1. Graham has had actual notice of this action for at least ten months, and the case has not substantively progressed since its filing in March 2022. Graham's defense, therefore, is not prejudiced by untimely service.

Turning to the third factor, Dillard did not satisfy the third factor because he never moved for an enlargement of time to serve, but that factor is not required for a court to find good cause for an extension. *Nuttall*, 122 F.R.D. at 167. A motion for enlargement demonstrates the plaintiff's diligence in attempting to serve the defendant, making the third factor essentially "a subset of the first factor." *Id.* Because the third factor is closely related to the first factor, failure to make a motion for enlargement is not fatal to a plaintiff's efforts to establish good cause, as diligence can be sufficiently demonstrated through the first factor. *Id.*

Dillard never moved for an enlargement of time to serve, but not having moved for an enlargement is not dispositive of whether the plaintiff had good cause for a delay. *Id.* Factor three is a subset of factor one, *see id.*, and factor one established that Dillard had been diligent in his attempted service.

---

[8] Actual notice does not have to occur within the window for service, as prejudice is determined independently from whether a plaintiff followed "every detail of Fed.R.Civ.P. 4." *Nuttall*, 122 F.R.D. at 167.

Because Dillard made reasonable efforts to serve Graham, and because Graham's defense is not prejudiced by the untimely service, Dillard has good cause for his delay even without having moved for an enlargement of time to serve, and this Court will grant an extension for service.

### C. Discretionary Extension

Even if Dillard did not qualify for a good cause extension for service, he would qualify for a discretionary extension for service.

If courts decide there is no good cause for a delay in service, they have discretion to dismiss the case without prejudice or extend the time allotted for service. *Petrucelli*, 46 F.3d at 1305-06. While courts have broad discretion to grant an extension of service, "could is not should," and just because a court can grant a discretionary extension does not mean it must. *M.K. ex rel. Barlowe K. v. Prestige Acad. Charter Sch.*, 751 F. App'x 204, 207 (3d Cir. 2018). The Federal Rules of Civil Procedure Advisory Committee Notes on Rule 4(m) provide guidance on when a discretionary extension should be granted, though the provided factors are not an exhaustive listing. Fed. R. Civ. P. 4 advisory committee notes; *see also Petrucelli*, 46 F.3d at 1305-06. The factors from the Notes include whether the applicable statute of limitations would bar refiling,[9] whether the defendant is evading or concealing a defect in service, and whether the plaintiff is appearing pro se. Fed. R. Civ. P. 4 advisory committee notes. The committee writes that district courts "should… take care to protect pro se plaintiffs from consequences of confusion or delay attending the resolution of an in forma pauperis petition." *Id.*

A discretionary extension should be granted because Dillard made a reasonable attempt to serve Graham as a pro se plaintiff, the most relevant factor from the Advisory Committee Notes in this case. As explained above, *see supra* Part I, Dillard is an inmate who was a pro se plaintiff

---

[9] The running of the statute of limitations is not a factor that can support the discretionary denial of a motion to extend.

until May 15, 2025. *See* ECF No. 54 at 1. He made multiple attempts to serve Graham, reasonably relying on the Marshals to make service, and he was unsuccessful because he faced great difficulty in finding Graham's address. ECF No. 56 at 4-5. This Court ordered the City to provide Plaintiff with Graham's last known address or accept service on his behalf. ECF No. 39 at 1; ECF No. 44 at 1. A subsequent hearing to show cause was canceled in part because the City represented that Graham's lawyer would accept service "without prejudice to the issue of the timeliness of service." ECF No. 50 at 5. The Court recognizes that Dillard has continued to make a reasonable effort to serve Graham since this case was filed. The Court has discretion to extend the time of service for a pro se plaintiff under these circumstances, and it shall use its discretion to extend the time for service here.

III. **<u>CONCLUSION</u>**

For the above reasons, the Court will **DENY** Graham's Motion to Dismiss (ECF No. 53), and grant Dillard an additional thirty days to serve the complaint on Defendant Graham. An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**
_____
**CHAD F. KENNEY, JUDGE**